UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACUMENTRICS CORPORATION,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | Civil Action No. 04-12432 WGY |
| | : | |
| CONNECTICUT INNOVATIONS,<br>INCORPORATED, CONNECTICUT<br>DEVELOPMENT AUTHORITY,<br>TOMASSO BROTHERS, INC.,<br>TUNXIS MANAGEMENT CO.,<br>ARTHUR DIETRICK, PETER ELLEF<br>and WILLIAM TOMASSO,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |

**MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES
FOR LEAVE TO INTERVENE TO STAY DISCOVERY
AND IN SUPPORT OF MOTION TO STAY DISCOVERY**

  The United States respectfully submits this memorandum in support of its motion for leave to intervene in this case and, if allowed to intervene in the case, in support of its motion to stay discovery in the above-captioned civil case, including discovery in ancillary arbitration proceedings. The United States seeks a stay of discovery until completion of criminal proceedings in the United States District Court for the District of Connecticut arising out of a criminal indictment, <u>United States v. Peter N. Ellef, et al.</u>, Crim. No. 3:04CR284(PCD) ("<u>United States v. Ellef</u>"). The United States seeks to stay discovery in order to conserve judicial resources and prevent circumvention of the more limited discovery rules under the Federal Rules of Criminal Procedure.

  The government's motion to intervene and to stay discovery in this case is unopposed. Counsel for the plaintiff, Acumentrics Corporation ("Acumentrics"), has represented that Acumentrics consents to the government's motion and does not oppose a stay of discovery in this case or in an ancillary arbitration proceeding pending resolution of the federal criminal case.

Counsel for Connecticut Innovations, Incorporated ("CII") and Connecticut Development Authority ("CDA") has represented that his clients have no objection to the government's motion to intervene and to stay discovery in this case or in any ancillary arbitration proceedings. Counsel for defendants Ellef, TBI, Tunxis, Tomasso have all represented that their clients take no position on the government's motion.[1]

I.  BACKGROUND

   A.  The Federal Indictment in the District of Connecticut

On September 23, 2004, a federal grand jury sitting in Hartford returned a 15-count indictment against Peter N. Ellef ("Ellef"), William A. Tomasso ("Tomasso"), Tomasso Brothers, Inc. ("TBI"), Tunxis Management Co. ("Tunxis"), Peter N. Ellef II ("Ellef II"), and LF Design, LLC ("LF Design").  The indictment in United States v. Ellef charges each defendant with conspiring to violate the Racketeer Influence and Corrupt Organization Statute ("RICO") and a substantive count of violating RICO, in violation of Title 18 U.S.C. §§ 1962(d) and 1962(c), respectively.  In addition, the indictment charges each defendant with conspiring to violate 18 U.S.C. § 666 (Bribery in Programs Receiving Federal Funds) and violations of the mail and/or wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  Ellef, Tomasso and TBI are charged with attempted extortion and conspiring to commit extortion in violation of 18 U.S.C. § 1951(a).  Ellef, Tomasso and Ellef II are charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  Finally, Ellef, Ellef II and LF Design are charged with conspiring to defraud the IRS in violation of 18 U.S.C. § 371.  (See Indictment, attached to the Complaint in this case as Exhibit A.)

---

[1] It is the government's understanding based on communications with counsel for Acumentrics that the only other named defendant, Arthur Diedrick, has not been served in this case.

On February 3, 2005, Senior United States District Judge Peter C. Dorsey of the United States District Court for the District of Connecticut issued a scheduling order indicating, among other things, that jury selection would take place on September 6, 2005. (See Scheduling Order, Feb. 3, 2005, Doc. #45, United States v. Ellef, 3:04CR284(PCD) (D. Conn.) (attached hereto as Exhibit A)).

The indictment stems from an ongoing investigation into official corruption involving the Office of the Governor of the State of Connecticut. On March 10, 2003, Lawrence Alibozek, former Deputy Chief of Staff to the Governor of Connecticut, and a named defendant in this state civil proceeding, pleaded guilty to a one-count information charging him with conspiring to violate 18 U.S.C. § 666 (bribery concerning programs receiving federal funds) and to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371. Alibozek, who is cooperating with the government's investigation, admitted that he agreed with others to accept the cash, gold and things of value with the intent to be influenced and rewarded in connection with state business, and that he knew that the cash, gold and other things of value were given by persons doing business with the State of Connecticut with the intent to influence and reward state officials, including him, in connection with state business.

The federal indictment handed up on September 23, 2004 alleges a corrupt relationship involving Tomasso, Ellef and others. The indictment alleges that during the time that Ellef served as Co-Chief of Staff to Governor John G. Rowland, from October 1997 to April 2002, Tomasso, TBI and Tunxis agreed to pay bribes, rewards and gratuities to defendants Ellef, Ellef II, and LF Design, as well as Alibozek and others, for, because of and in consideration for favorable and preferential treatment in connection with official State of Connecticut business by defendant ELLEF, Alibozek and others. The indictment alleges that Ellef, Ellef II and LF

Design, as well as Alibozek and others, received personal and financial benefits from Tomasso, TBI and Tunxis knowing that the benefits were provided with the intent to influence and reward Ellef and others in the performance of official acts. The indictment alleges that these benefits included, but were not limited to, cash, gold, meals, lodging, limousine services and vacation benefits, as well as financial support to a business owned by Ellef's son, LF Design, and payments to cover the costs associated with the development of a business to benefit Ellef and others.

The indictment alleges that Ellef acted improperly in connection with at least four state projects: state economic assistance for "Company T," the majority of which company was owned by William A. Tomasso and his family; worked performed for and contracts awarded by the Connecticut Lottery Corporation; the renovation of the Long Lane School; and the construction of the Connecticut Juvenile Training School ("CJTS"). In addition, the indictment charges extortionate conduct on the part of Ellef, Tomasso and TBI in connection with an out-of-state business, and charges that Ellef used his official position to induce private entities who wanted to do business with Connecticut to team up with Tomasso and TBI.[2]

C. Acumentrics Civil RICO Action

On November 17, 2004, a little less than two months after the return of the federal criminal indictment, Acumentrics brought the instant civil action against many of the same defendants, including Ellef, Tomasso, TBI and Tunxis. Acumentrics also named CII, CDA and

---

[2] On December 23, 2004, former Governor of Connecticut John G. Rowland waived indictment and pled guilty to a one-count Information charging him with conspiring with Ellef, Tomasso, TBI, Tunxis, and Alibozek to defraud the State of Connecticut of his honest services and to defraud the IRS. See United States v. John G. Rowland, 3:04CR284(PCD) (D. Conn.). On March 18, 2005, former Governor Rowland was sentenced to a term of imprisonment of one year and a day. See id., Judgment, Doc. #17.

Arthur Dietrick [*sic*] as defendants in the complaint. The complaint notes the fact that Ellef, Tomasso, TBI and Tunxis were indictment on racketeering and other charges on September 23, 2004, and that "the defendants' action set forth in this complaint served as one of many bases for the indictment[]." See Complaint at ¶ 31.

The primary focus of the complaint is the conduct of Ellef, Tomasso and other defendants in connection with Acumentrics agreement to relocate its manufacturing facility to Connecticut based on a promise of capital investment and public financing. See Cmplt. at ¶¶ 15. The complaint alleges that Ellef, Tomasso, TBI, Tunxis, Dietrick and others conspired to violate the RICO statute, and that Ellef and Dietrick used their positions to provide preferential treatment to Tomasso, TBI and Tunxis. The complaint alleges that as part of this conspiracy, Ellef identified Acumentrics as a possible means for disbursing public funds for the benefit of Tomasso, TBI and/or Tunxis, and that Ellef sought to induce Acumentrics to relocate its manufacturing facility to Connecticut with the promise of capital investment and public financing. See id. at ¶ 15.

The complaint alleges that on February 11, 2002, Ellef, Tomasso and others met with Acumentrics in Massachusetts to discuss a $10 million financing package to induce Acumentrics to move its facility to Connecticut. See id. at ¶ 16; cf. Indictment, Count 2, at ¶ 77. The complaint alleges that on March 1, 2002, concurrent with negotiations that were ongoing with CII about capital investment agreements, Acumentrics entered into a letter of intent with an affiliate of TBI and/or Tunxis for negotiation of a lease at an above-market rate of a building owned by Tomasso. See Cmplt. at ¶ 20; cf. Indictment at ¶ 79-81. The complaint alleges that shortly thereafter the defendants began to pressure Acumentrics into signing a lease for a commercial facility in Connecticut owned by Tomasso, but that by Summer 2002 it became clear that Acumentrics would be unable to do so. See Cmplt. at ¶ 21-22. The complaint alleges that

Acumentrics entered into a further agreement in or about September 2002 requiring Acumentrics to pay Tunxis $200,000, and that on October 16, 2002, Acumentrics in fact paid Tunxis $20,000 to extend payment terms of that agreement. See id. at ¶ 22; cf. Indictment at ¶¶ 82-84.

These allegation essentially mirror those in the Indictment in United States v. Ellef. See Indictment, Count 2, Racketeering Act 6; Counts Nine through Eleven (alleging mail fraud scheme by Ellef, Tomasso, TBI and Tunxis to defraud the State of Connecticut of the right to the honest services of Ellef and others in connection with an investment and loan by CII and CDA to a Massachusetts fuel cell company, to wit, Acumentrics); see also See Cmplt. at ¶ 31 ("the defendants' action set forth in this complaint served as one of many based for the indictment[]").

II.     INTERVENTION IS PROPER IN THIS CASE

    A.    Intervention Under Federal Rule of Civil Procedure 24(a)

The United States seeks intervention as of right, as well as permissive intervention, under Federal Rule of Civil Procedure 24. Under Rule 24(a), an applicant seeking intervention as a matter of right must meet four requirements. Under those requirements, intervention as of right is granted when an applicant (1) files a timely motion; (2) asserts an interest relating to the transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties. See Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers, 219 F.3d 31, 34 (1st Cir. 2000) (stating that "an applicant seeking to intervene as of right must show that the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented

by existing parties"); see also United States v. Pitney Bowes, Inc., 25 F.3d 66, 69-70 (2d Cir. 1994) (same).

The "application of the Rule involves the pragmatic balancing of a range of factors that arise in varying factual situations." Int'l Paper Co. v. Inhabitants of the Town of Jay, Maine, 887 F.2d 338, 343-344 (1st Cir. 1989). "Application of the Rule requires that its components be read not discretely, but together. . . . Finally, although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action." United States v. Hooker Chem. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984). In this case, the four factors are clearly satisfied.

1. Timeliness

The instant application to intervene is timely. It is the government's understanding that discovery in this case has not yet commenced, and that a scheduling order concerning discovery in this case has not yet issued.

2. Direct and Substantial Interest of the United States

The United States has a direct and substantial interest in the subject matter of the litigation. Indeed, the interests of the United States in the present case match those found in SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988), where the court allowed the United States to intervene, pursuant to Fed. R. Civ. P. 24(b), in the SEC's suit to halt proceedings:

> The Government had a discernable interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.

Accord SEC v. Mersky, et al., 1994 WL 22305, at *1 (E.D. Pa. 1994) ("Courts have almost universally permitted the United States to intervene in actions such as the present case."); First Merchants Enter., Inc. v. Shannon, 1989 WL 25214 at *2 (S.D.N.Y. 1989) ("where the

government contends that an ongoing criminal investigation would be prejudiced were certain civil discovery concerning the same facts and circumstances to proceed, permissive intervention to argue that claim is appropriate"). In deciding whether to stay civil discovery in favor of criminal prosecution, courts consider the following factors: "the interests of the defendants, the interest of the plaintiffs in proceeding with the litigation, the public interest, and the interests of the courts and of third parties." See SEC v. HGI, Inc., 1999 U.S. Dist. Lexis 17377 at *5-6 (S.D.N.Y. Nov. 9, 1999). In this case, all of these factors mandate a stay of the proceedings.

       3.    To Allow this Civil Case to Proceed Would Impair and Impede the Federal Criminal Case

The United States' interest in criminal prosecution of the charges against Ellef, Tomasso, TBI, and Tunxis will be severely impeded and impaired if discovery in the instant civil action is not stayed. The civil and criminal cases against the defendants concern common factual and legal issues. Central to both cases are the facts and circumstances surrounding the activities of the defendants in connection with official business of the State of Connecticut and the financial relationships among the various defendants.

Civil discovery will compromise the confidentiality of the Government's evidence, subject witnesses to duplicative interrogation, and burden the Court and the parties with legal and factual issues that may well be clarified through the more expeditious criminal action. For example, allowing discovery to proceed in this case will permit the defendants to obtain discovery of the criminal case through the deposition of witnesses who may have testified before the grand jury, been interviewed by the FBI, submitted to proffers, or worked out cooperation agreements with the United States.[3]

---

[3] If discovery is allowed to proceed in this case, the liberal civil rules concerning the taking of depositions may, and probably will, be used for criminal defense purposes. The strict

Absent a stay, the state civil action will inevitably involve discovery from cooperating government witnesses, as well as employees and former employees of the Governor's Office, CII, CDA and other individuals. The production of records and the taking the depositions of the government's witnesses would improperly allow defendants in the federal criminal proceeding access to the Government's evidence well beyond what they are entitled to under the Federal Rules of Criminal Procedure. See In re WorldCom Secur. Lit., 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2002) (granting a stay of civil action as to federal criminal defendant and the government's cooperating witnesses and noting that "[t]he U.S. Attorney has a significant interest in preserving the usefulness of cooperating defendants as Government witnesses").

Moreover, the likelihood that the defendants would invoke the privilege against self-incrimination in order to avoid their own depositions or production of information. No meaningful discovery could be obtained from the civil defendants, despite the discovery that those defendants would be obtaining from the Government's witnesses.

This very issue was confronted by the court in SEC v. Downe, 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993). There, the court recognized that intervention and "a stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine or gain unfair advantage in a criminal prosecution which parallels the subject matter." Id. at *12. See United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) (noting practice of staying civil discovery on prosecutor's request); HGI, Inc., 1999 U.S. Dist. Lexis 17377 at *8 (granting stay where defendant in SEC action "would be able to use the liberal civil discovery procedures to

---

Federal Rule of Criminal Procedure 15 allows a party to depose only its own witnesses and only in "exceptional circumstances." In addition, Fed. R. Cr. P. 16 and 17, which govern discovery in criminal cases, are much more restrictive than its federal civil counterparts, Fed. R. Civ. P. 26-37.

circumvent the more restrictive criminal procedures"). The Government has "[a] discernable interest in intervening in order to prevent discovery in the civil case from being used to circumvent the limited scope of discovery in the criminal matter." Chestman, 861 F.2d at 50.

    4.    <u>Acumentrics Cannot Protect the Interests of the United States</u>

Finally, the plaintiff in this case, Acumentrics, is not in a position to protect the prosecutive interests of the United States. "[T]he intervenor of right has an interest in the litigation that it cannot fully protect without joining the litigation, while the permissive intervenor does not." Stringfellow v. Concerned Neighbors In Action, 480 U.S. 370, 381 (1987) (Brennan, J. concurring). No party to this suit represents, nor can represent, the interests of the United States concerning the prosecution of the criminal statutes noted above. Indeed, counsel for Acumentrics has informed the United States that it has no objection to the granting of a stay of discovery in this civil action in order to protect those federal criminal prosecutive interests.

    B.    <u>Intervention Under Fed.R.Cr.P. 24(b), Permissive Intervention in the Public Interest</u>

Application of Rule 24(b) requires analysis similar to that of Rule 24(a) with respect to the timeliness of the application and the commonality of questions of law and fact, both of which are discussed above.

In addition, Rule 24(b) specifically permits intervention by state or federal governments. The thrust of this provision of Rule 24(b) "is in the direction of allowing intervention liberally to governmental agencies and officers seeking to speak for the public interest." 7C Wright, Miller & Kane, Federal Practice and Procedure, § 1912 at 373-374 (2d Ed. 1986). As more fully set forth above, the United States seeks intervention in this case to protect the public interest in the investigation and criminal prosecution of federal criminal law. The public interest is served by

giving precedence to the criminal prosecution with its narrower discovery procedures and higher burden of proof.

      C.      <u>Limited Potential Hardship to the Parties</u>

Intervention will not work a material hardship on the parties. Given the absence of any opposition to the government's motion, no party is even claiming hardship, much less a material one. Indeed, far from harming the defendants in the instant case, a stay would actually benefit them. As previously noted, defendants and other witnesses in this case, if involved in a pending criminal investigation, may feel obligated to assert their rights pursuant to the Fifth Amendment and be subject to an adverse inference drawn therefrom in the civil suit. This will prevent a full development of the facts and possibly restrict some of the defendants from fully defending themselves in the civil suit. In addition, a stay would preclude the exposure to the prosecution of the basis of the defense in advance of a criminal trial.

Intervention by the Government to stay discovery will likely conserve judicial resources. Disposition of the criminal case may significantly reduce the number of defendants and narrow the issues to be resolved in this civil suit. This should result in increased settlement opportunities and a significantly shorter trial. See <u>HGI, Inc.</u>, 1999 U.S. Dist. Lexis 17377 at *10 ("A guilty verdict would likely have collateral estoppel or <u>res judicata</u> effect on this case, but even a trial resulting in acquittal could expose the strengths and weaknesses of each side, thereby assisting settlement discussions."); <u>Golden Quality Ice Cream Co., Inc v. Deerfield Speciality Papers, Inc.</u>, 87 F.R.D. 53, 56 (E.D. Pa. 1980) (noting the "real possibility that a disposition favorable to the Government in the overlapping criminal prosecution will obviate much of the expenditure of time and dollars which plaintiffs would otherwise be compelled to invest in their civil suits").

III. A STAY OF THE FEDERAL CIVIL PROCEEDINGS SHOULD BE GRANTED

If the Court grants the Government's motion to intervene, a stay should be granted. As a threshold matter, this Court has authority to stay civil proceedings, particularly where, as here, there are parallel federal criminal proceedings. The authority to stay civil proceedings was recognized by the Supreme Court of the United States in Landis v. North American Co., 299 U.S. 248, 254-55 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

See also Doctor's Assoc., Inc. v. Distajo, 66 F.3d 438,456 (2d Cir. 1995) (same); Acton Corp. v. Borden, Inc., 670 F.2d 377, 380 (1st Cir. 1982) (same).

A stay of a civil case may be particularly appropriate where a parallel criminal proceeding is underway. See Kordel, 397 U.S. at 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); see also Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202-04 (Fed. Cir. 1987); Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962); Twenty First Century Corp. v. Labianca, 801 F.Supp. 1007 (E.D.N.Y. 1992); United States v. Hugh Key & Son, Inc., 672 F.Supp. 656, 658-59 (D. R.I. 1987); LaRouche Campaign v. F.B.I., 106 F.R.D. 500, 502 (D. Mass. 1985).

In the instant case, a stay is particularly appropriate. As outlined above in Part II, a stay of the civil action will prevent the circumvention of the Federal Rules of Criminal Discovery, will preserve the full rights of all parties in the criminal and civil actions, and will save judicial resources. Moreover, given the fact that jury selection in the federal criminal case is currently

scheduled for September 2005, any delay in the civil action will be minimal and will not unduly harm the defendants.  See Cote, 2001 WL 1618093, at *3 (noting that the "trial date for the criminal matter has been set," and that the "public interest in the integrity of the criminal process outweighs the harm the defendants may suffer from a delay of the discovery proceedings in the civil matter").

Stays of SEC civil actions, where parallel criminal prosecutions have been involved, have been routinely granted at the request of prosecutors.  See, e.g., SEC v. Mersky, supra, 1994 WL 22305 at *6; In re Ivan F. Boesky Secur. Lit., 128 F.R.D. 47, 48-49 (S.D.N.Y. 1988).

In Campbell, Judge Wisdom noted that the decision to stay a civil proceeding involves a balancing of competing interests that generally tips in favor of the public interest in criminal prosecutions:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first.  Administrative policy gives priority to the public interest in law enforcement.  This seems so necessary and wise that trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

307 F.2d at 487 (emphasis added); see also Hugo Key & Son, 672 F. Supp. at 658 (Pettine, J., quoting this passage from Campbell).  As the Mersky decision pointed out: "Citing Eastland, numerous courts have recognized the great weight to be accorded the United States' interest in obtaining a stay of civil discovery pending the resolution of criminal proceedings.  See, e.g., United States v. Stewart, 872 F.2d 957, 962-63 (10th Cir. 1989); Chestman, 861 F.2d at 50; Mellon Bank, 545 F.2d at 873-74; Downe, 1993 WL 22126, at *12; United States v. Hugo Key and Son, Inc., 672 F.Supp 656, 658-59 (D.R.I. 1987)." Mersky, 1994 WL 22305, at *4.

IV.  CONCLUSION

For the foregoing reasons, the United States requests the right to intervene in this action, and respectfully moves this Court to stay discovery in the instant civil action and any ancillary arbitration proceedings until the conclusion of the federal criminal case, <u>United States v. Peter N. Ellef, et al.</u>, 3:04CR284(PCD) (D. Conn.), and for such other relief as the Court may deem just and proper.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          UNITED STATES ATTORNEY


          NORA R. DANNEHY
          SPECIAL ASSISTANT UNITED STATES ATTORNEY
          Federal Bar No. Ct01942
          450 Main Street, Rm. 328
          Hartford, Connecticut 06103
          nora.dannehy@usdoj.gov
          Tel:   (860) 947-1101
          Fax:  (860) 240-3291

          ERIC J. GLOVER
          SPECIAL ASSISTANT UNITED STATES ATTORNEY
          Federal Bar No. Ct23923
          157 Church Street
          New Haven, Ct 06510
          eric.glover@usdoj.gov
          Tel:   (203) 821-3745
          Fax:  (203) 773-5378

          /s/ Shelbey D. Wright
          SHELBEY D. WRIGHT
          ASSISTANT UNITED STATES ATTORNEY
          United States Courthouse
          Suite 9200
          1 Courthouse Way
          Boston, MA 02210
          (617) 748-3100

Date:  April 29, 2005

CERTIFICATION OF SERVICE

This is to certify that on April 29, 2005, the undersigned caused a true and correct copy of the foregoing to be sent by first class mail to:

Robert M. Disch, Esq.
SHEPPARD, MULLIN, RICHTER
    & HAMPTON, LLP
11th Fl. East, 1300 I Street NW
Washington, D.C. 20005-3314
(Counsel for William A. Tomasso, Tomasso Brothers, Inc., Tunxis Management Co.)

Hugh F. Keefe, Esq.
LYNCH, TRAUB, KEEFE & ERRANTE
P.O. Box 1612
52 Trumbull Street
New Haven, CT 06506-1612
(Accepting service for Peter N. Ellef)

Robert R. Pierce, Esq.
PIERCE & MANDELL, P.C.
11 Beacon Street
Boston, MA 02108
(Counsel for Acumentrics Corporation)

James C. Rehniquist, Esq.
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(Counsel for Connecticut Innovations, Inc. and Connecticut Development Authority)

Robert L. Wyld, Esq.
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
(Counsel for Connecticut Innovations, Inc., and Connecticut Development Authority)

 /s/ Eric J. Glover (by SDW)
ERIC J. GLOVER
SPECIAL ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 3:04CR284(PCD) |
| v. | : |
| PETER N. ELLEF,<br>WILLIAM A. TOMASSO,<br>TOMASSO BROTHERS, INC.,<br>TUNXIS MANAGEMENT CO.,<br>PETER N. ELLEF II, and<br>LF DESIGN, LLC | : |

## SCHEDULING ORDER

In accordance with Rule16 the Local Rules of Criminal Procedure, and after consultation with counsel for the government and counsel for all defendants, the Court sets the following schedule for the filing of pretrial motions and the trial of this case. The Court further orders that any motions to extend the date for the trial of this matter must be filed on or before July 25, 2005. The defendants shall file Waivers of the Speedy Trial Act on or before February 14, 2005.

| | |
|---|---|
| Motions For Discovery | February 28, 2005 |
| Government's Responses<br>To Discovery Motions | March 28, 2004 |
| Hearing On Discovery Motions | Week of April 1, 2005 |
| Production of Any Additional Material | Week of April 15, 2005 |
| Defendants' Substantive Motions<br>(Motions To Dismiss, Sever, Suppress) | April 4, 2005 |
| Government's Response Memoranda | June 3, 2005 |
| Defendants' Reply Memoranda | June 17, 2005 |
| Hearing On Motions | Week of June 27, 2005 |

Jury Selection                                          September 6, 2005


Dated at New Haven, Connecticut, this 3rd day of February, 2005.


                              IT IS SO ORDERED


                              _____
                              PETER C. DORSEY
                              SENIOR UNITED STATES DISTRICT JUDGE